UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MOHAMED HASSAN JEYLANI,

Petitioner,

v.

CAUSE NO. 3:26-CV-519-CCB-SJF

BRIAN ENGLISH, et al.,

Respondents.

## <u>OPINION AND ORDER</u>

Immigration detainee Mohamed Hassan Jeylani, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 1. The respondents have answered the petition, and Jeylani has filed a reply. ECF 7, ECF 9. The petition is ready to be decided.

<u>BACKGROUND</u>

Jeylani is a citizen of Somalia who entered the United States in 1998 as a refugee. ECF 7-1 at 2-6.  On September 20, 2017, he was convicted of possessing stolen property in New York. *Id.* On July 9, 2019, he was convicted on another charge of possessing stolen property in New York. *Id.* On September 17, 2020, an immigration judge granted him withholding of removal to Somalia, and the Board of Immigration Appeals dismissed the appeal on March 30, 2021. *Id.* at 6-9. On December 2, 2020, Immigration and Customs Enforcement (ICE) released Jeylani on an Order of Supervision. *Id.* On

December 24, 2025, ICE detained him again pursuant to a Warrant of Removal, and he is currently held at the Miami Correctional Facility. *Id.* at 10; ECF 7-3.

On April 26, 2026, the respondents filed a status report representing that it was unlikely that Jeylani would be removed within thirty days. ECF 6.  On April 24, 2026, an ICE official attested that his office continues to work with internal headquarters to remove Jeylani to a third country. ECF 7-3.

SUBJECT MATTER JURISDICTION

The respondents first argue that the court lacks subject matter jurisdiction over Jeylani's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang, v. English*, No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)).

MERITS

Regarding the merits of the petition, the respondent first argues that Jeylani's detention is lawful under 8 U.S.C. § 1231 because the statute authorizes detention pending execution of a removal order. However, beyond the "removal period,"[1] which for Jeylani ended in July 2021, continued detention is authorized only for certain

---

[1] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

2

noncitizens delineated in § 1231(a)(6) and only as long as removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Jeylani has not been in detention for longer than six months. His immediate term of detention spans only five months, and he has not otherwise been held in post-removal order detention. Consequently, his detention is presumptively reasonable under *Zadvydas*. This raises the question of what the consequences are when there is an intact presumption of reasonableness. The federal courts are split on whether an intact presumption is fatal to a petitioner's claim or whether a petitioner is entitled to an

3

opportunity to rebut the presumption. *Compare Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 373-77 (D. Md. 2025) (rebuttable presumption); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395-98 (D.N.J. 2025) (rebuttable presumption); *Cesar v. Achim*, 542 F. Supp. 2d 897, 902-05 (E.D. Wis. 2008) (rebuttable presumption) *with Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) (affirming dismissal of claim as premature because "Okpoju had not yet been in custody longer than the presumptively reasonable six-month post removal order period."); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("This six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*.").

However, the court need not resolve this dispute because Jeylani would not prevail on this claim even if the presumption is rebuttable. The courts finding that the presumption of reasonableness is rebuttable have explained the consequences of the intact presumption as follows:

> [T]he scheme operates merely to shift and alter the burden of proving whether or not detention pursuant to § 1231(a)(6) is permissible. Within the six-month window, the detainee must prove the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity. After the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the government must then disprove. And as time passes, the burden on the government increases accordingly. Thus, the presumption scheme merely suggests that the burden the detainee must carry within the first six months of postorder detention is a heavier one than after six months has elapsed.

*Cesar*, 542 F.Supp.2d at 903. Stated otherwise, the burden of proof rests entirely with Mr. Jeylani because the presumption remains intact.

The respondents do not suggest that the government is attempting to remove Jeylani to Somalia in contravention of the order withholding removal. Instead, the respondents indicate that the government is actively working to remove Jeylani to a third country. Jeylani's central argument for lack of foreseeability is that the government has not yet identified candidates for third country removal, let alone submitting formal requests to third countries to accept Jeylani for removal or for travel documents or scheduling a removal date. While this apparent administrative delay is concerning, the court finds that such delay is insufficient to carry the petitioner's burden while the presumption of reasonableness remains intact. It seems unlikely that a five-month administrative delay alone would be adequate to rebut a presumption of reasonableness that was largely intended to account for administrative delay and that itself spans six months. As a result, the court declines to grant habeas relief on this claim at this time. The court similarly finds that petitioner's claim that the government has not notified him of a third country removal as required by the federal regulations is also premature.

Next, Jeylani argues that he is entitled to habeas relief because the government detained him based on animus towards his national origin as a Somalian individual. He observes that President Donald J. Trump's rhetoric relating to Somali immigrants coincided with increased efforts to detain and remove Somalis residing in the Minneapolis region. "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir.

5

2001). "To prove discriminatory effect, the plaintiffs are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class." *Id.* "Discriminatory purpose implies more than intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part because of its adverse effects upon an identifiable group." *Id.* at 645.

To start, the court observes that immigration law generally does not contemplate detention or removal for citizens, so the fact that the government targets only noncitizens for immigration detention and removal cannot be a violation of the Equal Protection Clause. Further, Jeylani identifies no similarly situated noncitizens that do not share his Somalian nationality and have not been detained or subjected to removal efforts, so the court cannot find that the government has treated Jeylani differently based on his status as a Somalian individual. Moreover, the Supreme Court has cautioned against entertaining selective prosecution claims in the context of immigration due to potential delay, required disclosure of foreign policy matters, and the fact that removal is necessary to end ongoing legal violations. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488 (1999). Consequently, the court finds that the equal protection claim is not a basis for habeas relief.

Jeylani also argues that he is entitled to habeas relief because the government arrested him without a warrant in violation of 8 U.S.C. § 1357(a) and 8 C.F.R. 287.3(d). However, the respondents have provided a copy of a warrant for removal for Jeylani's

6

arrest, dated December 24, 2025. ECF 7-1 at 10. Though Jeylani questions whether the warrant was issued prior to his arrest, he does not substantially dispute the authenticity or validity of this warrant, so this claim is not a basis for habeas relief.

Jeylani further argues that he is entitled to habeas relief because the government has not provided notice of the reasons for revoking his supervised release, has not provided an initial informal interview, and has not provided periodic custody reviews. "[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."). The regulations require the government to provide notice of the reasons for revoking supervised release "upon revocation" and require the government to provide an initial informal interview "promptly" after a noncitizen's return to immigration custody. 8 C.F.R. § 241.13(i)(3). The regulations further require the government to provide periodic custody reviews if the noncitizen remains in custody following the initial informal interview, the first of which "will ordinarily be expected to occur within approximately three months after release is revoked." *Id.*; 8 C.F.R. § 241.4(l)(3). There is no indication in the record that the government has satisfied these procedures after five months of detention, and the respondents merely respond that unconditional release is not the appropriate remedy.

Notice of the reasons for revocation and an initial informal interview are prerequisite steps to an initial custody review. Consequently, the court will order the

respondents to provide notice of the reasons for revocation and an initial informal interview. The court will also set a subsequent deadline for the respondents to file a status report regarding the status of the government's efforts to locate a third country for removal, including a list of third country candidates, the dates any removal-related applications or requests were submitted to such candidates, and whether any responses have been received. The status report should also address the status of the initial custody review. The court does not grant habeas relief on the *Zadvydas* claim and the claim relating to a lack of an initial custody review at this time but will reconsider whether habeas relief is appropriate after reviewing this status report.

For these reasons, the court:

(1) **CONDITIONALLY GRANTS** the petition (ECF 1) in part. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

(2) **ORDERS** the respondents to provide Mohamed Hassan Jeylani with a notice of revocation and an initial informal interview as required by 8 C.F.R. § 241.13(i)(3) by **June 4, 2026,** if they continue to hold him in custody;

(3) **ORDERS** the respondents to file a notice by **June 8, 2026**, demonstrating that either  Mohamed Hassan Jeylani has been released or that he has received a notice of revocation and an initial informal interview; and

(4) **ORDERS** the respondents to file a status report regarding the government's efforts to locate a third country for removal and the initial custody review by **July 2, 2026**; and

(5) **DEFERS** a final resolution of the habeas petition until after the respondents have filed the status report.

SO ORDERED on May 21, 2026

*/s/Cristal C. Brisco*

CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT