UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MOHAMED HASSAN JEYLANI,

Petitioner,

v.

CAUSE NO. 3:26-CV-519-CCB-SJF

BRIAN ENGLISH, et al.,

Respondents.

## OPINION AND ORDER

Immigration detainee Mohamed Hassan Jeylani, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 1. On May 21, 2026, the court conditionally granted the habeas petition on Jeylani's claim that he did not receive notice of the reasons for revocation and an initial informal interview. ECF 13. Further, the court found that Jeylani was not entitled to relief under *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). *Id.* The court found that, while it did not appear that the government had taken any specific measures to remove him to a third country, Jeylani remained within the six-month period of presumptive reasonableness as of May 21, 2026. *Id.* Consequently, the court ordered the respondents to file a status report regarding removal efforts by July 2, 2026, and advised that it would reconsider the *Zadvydas* claim after reviewing the status report. *Id.* The respondents have now filed the status report (ECF 17), so the court will reconsider the *Zadvydas* claim.

BACKGROUND

Jeylani is a citizen of Somalia who entered the United States in 1998 as a refugee. ECF 7-1 at 2-6.  On September 20, 2017, he was convicted of possessing stolen property in New York. *Id.* On July 9, 2019, he was convicted on another charge of possessing stolen property in New York. *Id.* On September 17, 2020, an immigration judge granted him withholding of removal to Somalia, and the Board of Immigration Appeals dismissed the appeal on March 30, 2021. *Id.* at 6-9. On December 2, 2020, Immigration and Customs Enforcement (ICE) released Jeylani on an Order of Supervision. *Id.* On December 24, 2025, ICE detained him again pursuant to a Warrant of Removal, and he is currently held at the Miami Correctional Facility. *Id.* at 10; ECF 7-3.

On April 26, 2026, the respondents filed a status report representing that it was unlikely that Jeylani would be removed within thirty days. ECF 6. On April 24, 2026, an ICE official attested that his office continues to work with internal headquarters to remove Jeylani to a third country. ECF 7-3. On July 2, 2026, the respondents filed a status report representing that the government afforded Jeylani an initial informal interview on June 3, 2026, and that the government has not yet identified a third country for removal. ECF 17.[1]

---

[1] Jeylani filed a letter presenting his concerns about the adequacy of the notice of revocation and initial informal interview afforded by the government. ECF 16. The court's ruling on the *Zadvydas* claim in this order moots the claim that Jeylani did not receive notice of revocation and an initial informal interview. Consequently, the court need not further address Jeylani's concerns about the notice of revocation and the initial informal interview.

SUBJECT MATTER JURISDICTION

The respondents first argue that the court lacks subject matter jurisdiction over Jeylani's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). This court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure. *See Liang, v. English*, No. 3:25CV1052 DRL-SJF, 2026 WL 835853, at *1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.); *Pho v. Noem*, No. 3:25-CV-977-CCB-SJF, 2025 WL 3750684, at *1-*4 (N.D. Ind. Dec. 29, 2025) (Brisco, J.) (discussing § 1252(g)).

MERITS

Regarding the merits of the petition, the respondent first argues that Jeylani's detention is lawful under 8 U.S.C. § 1231 because the statute authorizes detention pending execution of a removal order. However, beyond the "removal period,"[2] which for Jeylani ended in July 2021, continued detention is authorized only for certain noncitizens delineated in § 1231(a)(6) and only as long as removal is reasonably foreseeable. *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). The Supreme Court has instructed that once removal is not reasonably foreseeable, "the court should hold continued detention unreasonable and no longer authorized by statute," though any release "may and should be conditioned on any of the various

---

[2] The removal period begins on the latest of three events: (1) the date the removal order becomes administratively final, (2) the date of a reviewing court's final order if the noncitizen seeks judicial review and the court orders a stay of removal, or (3) upon the noncitizen's release from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B).

3

forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

In *Zadvydas*, the Supreme Court adopted a "presumptively reasonable period of detention" of six months in recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. Because Jeylani has now been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable.

To start, the parties do not dispute that Jeylani cannot be removed to Somalia due to the order withholding removal. Further, Jeylani's post-removal order detention now spans more than six months with no indication that the government has taken any specific measures to effectuate his removal to other countries. The court finds that Jeylani has met his preliminary burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

To rebut this showing, the respondents offer the attestation that the government is working to identify a third country for removal. This vague attestation does not persuade the court that Jeylani's removal is likely to occur within the reasonably foreseeable future. It does not explain why no candidate countries have been identified after more than six months of post-removal order detention or when such an

4

identification might occur. It does not describe the process for identifying third countries or any specific cause for the lengthy delay. It does not suggest that the government is in the process of preparing a formal request to a third country or any basis for the delay in submitting such a request. It does not provide any insight as to when these countries might reach a decision once a formal request has been submitted or the likelihood that these countries will accept Jeylani for removal and issue travel documents. Consequently, the court finds that the respondents have not adequately demonstrated that Jeylani's removal is reasonably foreseeable. Therefore, the respondents must release Jeylani.

For these reasons, the court:

(1) **GRANTS** the petition for writ of habeas corpus (ECF 1) and **ORDERS** the respondent to release Mohamed Hassan Jeylani on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **July 9, 2026**;

(2) **DIRECTS** the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release; and

(3) **ORDERS** that any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED on July 7, 2026.

_/s/ Cristal C. Brisco_
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

5